**IT IS ORDERED as set forth below:**



**Date: March 30, 2026**

_____
_Susan D. Barrett_

United States Bankruptcy Judge
Southern District of Georgia

---

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| | ) | Number 25-10453 |
| ADAM GOEPEL MAISANO, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## OPINION AND ORDER

Before the Court are the Chapter 7 Trustee's ("Trustee's") Motion for Turnover of Property ("Motion") and Objection to Debtor's Claim of Exemptions ("Objection"). Dckt. Nos. 25, 26. The Trustee and Adam Goepel Maisano ("Debtor") filed post-hearing briefs. Dckt. Nos. 63, 65. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (B), (E), and (O). As to the Merrill Lynch IRA discussed in this Opinion and Order, the Trustee's Objection is OVERRULED and the Motion is DENIED.

## UNDISPUTED FACTS

The following facts are undisputed:

1. Debtor filed a petition for chapter 7 bankruptcy on July 9, 2025. Dckt. No. 1.

1

2. Debtor disclosed his ownership of an individual retirement account ("Merrill Lynch IRA") with residual holdings as of the petition date of $25,496.81.  Dckt. No. 17, at 12.

3. Debtor is the owner and beneficiary of the Merrill Lynch IRA, which is maintained with Merrill Lynch ("Merrill Lynch").  Id.; Dckt. No. 65, at 1, 5.

4. Debtor claims the Merrill Lynch IRA as exempt pursuant to O.C.G.A. §18-4-6(a).  Dckt. No. 17, at 22.

5. Several years before filing this bankruptcy, Debtor took an early distribution from the Merrill Lynch IRA.  Dckt. No. 63, at 2; Dckt. No. 65, at 1.

6. Debtor testified the early distribution occurred before he reached the age of $59^{1/2}$.

7. The funds withdrawn from the Merrill Lynch IRA were deposited into Debtor's personal checking account and commingled with other funds in the account.  Dckt. No. 63, at 2; Dckt. No. 65, at 1, 7.

8. Thereafter, Debtor removed these funds from his personal checking account and invested them in his used car dealerships, 212 Motors, through the purchase of a minority membership interest in the business.  See Dckt. No. 65, at 3–4; see also Dckt. No. 17, at 11; Dckt. No. 63, at 2.

9. These sums were not transferred directly from the Merrill Lynch IRA to 212 Motors, or any other party, nor were they loaned by the Merrill Lynch IRA to 212 Motors, or any party.  See Dckt. No. 63, at 2; Dckt. No. 65, at 2.

10. In regards to the early distribution, Debtor received a 2019 Form 1099-R (Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.) reflecting his receipt of a gross distribution from the Merrill Lynch IRA of $43,727.37, and denoting distribution code "1" in Box 7.  Def.'s Hr'g Ex. D-1, Oct. 23, 2025.

11. Distribution Code 1 denotes an "[e]arly distribution, no known exception (in most cases, under age $59^{1/2}$)." Id. at 2.

12. Debtor duly reported and paid the resulting taxes on the early distribution. Dckt. No. 65, at 1.

13. Debtor is a "fiduciary" and "disqualified person," as those terms are defined in 26 U.S.C. §4975(e)(3) and (e)(2)(A), respectively.

14. The IRS has never challenged the status of the Merrill Lynch IRA as an "individual retirement account" ("IRA") under the Internal Revenue Code ("IRC").

## **CONCLUSIONS OF LAW**

The Trustee argues Debtor's early distribution from his Merrill Lynch IRA and subsequent investment of these withdrawn funds into 212 Motors was a "prohibited transaction" under 26 U.S.C. §4975, and thus the residual Merrill Lynch IRA ceased to be an IRA as defined by 26 U.S.C. §408(a) and therefore cannot be excluded from Debtor's bankruptcy estate pursuant to O.C.G.A. §18-4-6. Dckt. No. 63, at 2; see also 11 U.S.C. §541(c)(2). For the following reasons, the Court disagrees.

As the Eleventh Circuit has noted:

The Bankruptcy Code provides that property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). The Code, however, excludes from the estate property of the debtor that is subject to a restriction on transfer enforceable under applicable nonbankruptcy law . . . . [which] has been interpreted to include any relevant nonbankruptcy law—whether it be federal or state law.
. . . .
Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Thus, a debtor's property is excluded from his bankruptcy estate pursuant to §541(c)(2) if three elements are met: (1) the debtor has "a beneficial interest in a trust"; (2) the interest has a restriction on transfer; and (3) the restriction is enforceable under either state or federal law. See id.; see also In re Upshaw, 542 B.R. 619, 622 (Bankr. N.D. Ga. 2015).

The relevant state law here is the exemptions provision of Georgia's garnishment statute, O.C.G.A. §18-4-6 (exemptions provision).  Georgia's current exemptions provision provides that "[c]ertain earnings or property" may be exempt from the process of garnishment.  Id. §18-4-6(a)(1).  One such example of exempt property concerns funds from an IRA: "Funds or benefits from an individual retirement account or from a pension or retirement program shall be exempt from the process of garnishment until paid or otherwise distributed to a member of such program or beneficiary thereof."  Id. §18-4-6(a)(2).

We have found that . . . the prohibition on garnishment is an enforceable restriction on transfer for the purposes of 11 U.S.C. § 541(c)(2).  We therefore concluded that an IRA established under 26 U.S.C. §408—a traditional IRA [and a Roth IRA]—[are] excluded from a debtor's estate under §541(c)(2) because it is exempt from garnishment pursuant to Georgia law.

Hoffman v. Signature Bank of Ga. (In re Hoffman), 22 F.4th 1341, 1344–45 (11th Cir. 2022)  (citation modified); see also O.C.G.A. §18-4-6(a).  The parties have agreed that the Trustee has the burden of proof on these issues.

Section 408(e)(1) of the IRC provides "[a]ny individual retirement account is exempt from taxation under this subtitle unless such account has ceased to be an individual retirement account by reason of paragraph (2) or (3)."[1]  26 U.S.C. §408(e)(1).  In turn, §408(e)(2)(A) of the IRC provides:

If, during any taxable year of the individual for whose benefit any individual retirement account is established, that individual or his beneficiary engages in any **transaction prohibited by section 4975** with respect to such account, **such account ceases to be an individual retirement account as of the first day of such taxable year** . . . .

26 U.S.C. §408(e)(2)(A) (emphasis added); Yerian v. Webber (In re Yerian), 927 F.3d 1223, 1228 (11th Cir. 2019) ("Section 408 . . . sets out rules for how an IRA must be operated in order to keep its tax-exempt status.  One way an IRA can [cease to be an IRA under the IRC and] lose its tax-exempt status is for the IRA owner to engage in 'prohibited transactions'—a category that includes 'abuses' placing the plan at risk of loss before retirement, as well as various acts of 'self-dealing.'").

The IRC further provides:

[T]he term "prohibited transaction" means any direct or indirect—

---

[1]   For purposes of this Opinion and Order, 26 U.S.C. §408(e)(3) is not applicable.

(A) sale or exchange, or leasing, of any property between a plan and a disqualified person;

(B) lending of money or other extension of credit between a plan and a disqualified person;

(C) furnishing of goods, services, or facilities between a plan and a disqualified person;

(D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;

(E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or

(F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

26 U.S.C. §4975(c)(1).   The parties acknowledge the Merrill Lynch IRA is a plan and that Debtor is a fiduciary and disqualified person for purposes of the IRC.  They diverge on whether the residual Merrill Lynch IRA ceased to be an IRA under the IRC when Debtor:  (1) withdrew funds from his Merrill Lynch IRA early (before he reached the age of $59^{1/2}$); (2) deposited these funds into his personal bank account; (3) subsequently took these funds from his personal bank account and invested the funds into his business; and (4) duly reported the transaction and paid the prescribed taxes.  See Dckt. No. 63, at 2–3.

The Trustee's argument effectively raises two questions:  (1) was Debtor's early distribution (before the age of $59^{1/2}$) of these funds a "prohibited transaction"; and (2) if not, whether Debtor's conduct tainted the transaction resulting in the IRA's disqualification.  See generally In re Moore, 640 B.R. 397, 403–404 (Bankr. S.D. Ohio 2022) (setting forth two-part analysis).

The Trustee argues as a disqualified person and fiduciary, Debtor's early distribution from the Merrill Lynch IRA was a "prohibited transaction" causing the Merrill Lynch IRA to cease being a

qualified IRA under §408 of the IRC, and to become nothing more than a simple brokerage account which Debtor cannot exclude from his bankruptcy estate under O.C.G.A. §18-4-6(a). Dckt. No. 63, at 4. However, the mere fact that withdrawals are made by a disqualified person and fiduciary does not disqualify the entire IRA; provided the withdrawals are made in compliance with the terms of the plan and IRC. In re Moore, 640 B.R. at 404 ("While [Debtor] is certainly a fiduciary and disqualified person under §4975, this status does not disqualify him from receiving the benefits to which he is entitled under the IRA plan."); 26 U.S.C. §4975(d)(9) ("the prohibitions provided in subsection (c) [prohibited transactions] shall not apply to . . . receipt by a disqualified person of any benefit to which he may be entitled as a participant or beneficiary in the plan, so long as the benefit is computed and paid on a basis which is consistent with the terms of the plan as applied to all other participants and beneficiaries[.]" 26 U.S.C. §4975(d)(9). The Trustee does not contend the early distribution was not allowed under the terms of the plan, or that it was not computed and paid on a consistent basis.

Owners of IRA plans often serve in many capacities—owner, plan participant, disqualified person, fiduciary, and beneficiary—but not all actions are collective, nor do they necessarily result in a per se prohibited transaction disqualifying the entire IRA.

> Owners of . . . IRAs necessarily play dual roles in that they exercise control and direct IRA investments as account fiduciaries while also receiving benefits under the plan as beneficiaries. See Advisory Opinion, Seymour Goldberg, Esq., Opinion No. 2009-02A at *3 (Dep't of Labor 2009) ("an IRA owner's decision to make an otherwise permissible benefit distribution to himself or herself in accordance with the terms of the IRA is not an act by the IRA owner as a fiduciary within the meaning of the prohibitions in Code sections 4975(c)(1)(D) and (E)"); see also McNulty v. Comm'r, No. 1377-19, 2021 U.S. Tax Ct. LEXIS 70, at *12, 2021 WL 5371215, at *5 (T.C. Nov. 18, 2021) (noting that owner control over IRA asset investments does not result in a loss of the IRA's tax-exempt status). In considering this apparent dichotomy, it is useful to recall that §4975 came into being as part of ERISA, "a comprehensive remedial scheme designed to protect the pensions and benefits of employees" and exists to "prevent people with a close relationship to a plan (disqualified persons) from using the relationship to the detriment of plan beneficiaries." O'Malley v. Comm'r, 972 F.2d 150, 153 (7th Cir. 1992) (quoting Wood v. Comm'r., 955 F.2d 908, 910 (4th Cir. 1992)). Because of this, while §4975 equally applies to self-directed IRAs, the language reflects

and is written to encompass the complex situations and roles that arise in the management of a large employer-sponsored 401k or pension plan.

In re Moore, 640 B.R. at 404; see also Indep. Bank v. Baarstad, No. 2-17-0496, 2018 WL 1738323, at *6 (Ill. App. Ct. Apr. 9, 2018) (the court agreed with plan participant's argument that the "act of withdrawing funds [from an IRA] is that of a participant, one that any other participant in an IRA would be permitted to make, and that such an action is not that of a fiduciary [or disqualified person], and therefore not prohibited.").

The IRC expressly allows an IRA owner under the age of $59^{1/2}$, such as Debtor, to withdraw IRA assets at any time; provided, however, that a 10% additional tax generally applies on the early distribution.  See 26 U.S.C. §72(t)(1) ("If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)) [before the age of $59^{1/2}$], the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income"); id. §4975(d)(9); see also In re Jacobs, 662 B.R. 376, 393 (Bankr. N.D. Okla. 2024) (citations omitted) ("An exception applies [to prohibited transactions] . . . when a taxpayer receives benefits to which they are entitled as a participant of the retirement plan, including the ability to withdraw funds from their own account, subject to the terms that would apply to any other participant of a qualified plan, such as payment of taxes or penalties.  This includes the ability of any participant to withdraw assets from a qualified retirement plan as an early distribution . . . . Once plan assets are distributed from the underlying trust account, they are no longer considered trust assets, and are no longer subject to I.R.C. §4975.");[2] I.R.S., Contributions to Individual Retirement Arrangements (IRAs), Pub. 590-A (2019), at 31 ("You can

---

[2]   While this portion of In re Jacobs involved a 401(k) plan, the "prohibited transaction" analysis on this issue is the same.  See In re Jacobs, 662 B.R. at 392 ("Although the [other] court . . . was referring to distributions from an IRA account, the principle espoused there [for prohibited transactions] applies equally to distributions from a qualified employer-sponsored retirement plan under I.R.C. §401.").

withdraw or use your traditional IRA assets **at any time**. However, a 10% additional tax generally applies if you withdraw or use IRA assets before you reach age $59^{1/2}$.") (emphasis added); I.R.S., Distributions from Individual Retirement Arrangements (IRAs), Pub. 590-B (2019), at 6 (same); 26 C.F.R. §1.408-1(c)(1)–(6) (detailing the sanctions for various transactions, including (2) prohibited transactions by owner or beneficiary of the IRA – the IRA ceases to be recognized as an IRA; and (6) premature distributions before the age of $59^{1/2}$ – a 10% tax on is due on the amount distributed).

This different treatment for such early withdrawals versus prohibited transactions is further supported by the actual Form 1099-R Merrill Lynch duly issued in this case. Def's Hr'g Ex. D-1, Oct. 23, 2025. The Form 1099-R includes nine distribution codes for the payer (in this case, Merrill Lynch) to use to classify the withdrawal. See I.R.S., Instructions for Forms 1099-R and 5498 (2019), at 14. In this case, Merrill Lynch classified Debtor's withdrawal using distribution code "1" in Box 7 of the Form 1099-R. See Def's Hr'g Ex. D-1, Oct. 23, 2025, at 1–2 ("Early distribution, no known exception (in most cases, under age 59 ½)."). The IRS instructions for Form 1099-R include the following guide to the distribution codes:

> [Distribution Code] 1—Early distribution, no known exception. . . . Use Code 1 only if the participant has not reached age $59^{1/2}$, and you do not know if any of the [early withdrawal] exceptions . . . apply.
>
> . . . .
>
> [Distribution Code] 5—Prohibited transaction. . . . Use Code 5 if there was a prohibited transaction involving the IRA account. Code 5 means the account is no longer an IRA.

See Instructions for Forms 1099-R and 5498, at 16. With this classification, it is clear that Merrill Lynch and Debtor both properly classified the withdrawal as an early distribution, not a prohibited transaction. Debtor duly reported the early distribution and paid the applicable taxes, and the IRS has never challenged the validity of the classification or the status of the Merrill Lynch IRA as an IRA

under the IRC.  For these reasons, the Court does not find Debtor's early withdrawal of these funds to be a prohibited transaction.

The next consideration is whether Debtor's subsequent investment of these funds into his business tainted the transaction, thus nullifying the plan's status as an IRA under the IRC.  For the following reasons, the Court finds Debtor's ultimate use of these funds did not taint the transaction.

> The IRS rules permit (and at times require) owners to take allowed distributions from an IRA, regardless of whether the funds will be used for a wise or ill-advised purpose. Whether used for a grocery bill or gambling spree, the IRS makes no inquiry as to the use of the funds and demands only that the owner remit any owed taxes on the distribution . . . . The IRS rules limit how plan assets can be used and when they can be withdrawn but do not regulate the purpose for which the funds are used after they are withdrawn by the beneficiary and cease to be plan assets.

In re Moore, 640 B.R. at 405–06.  Like Debtor, Moore was a disqualified person and fiduciary who withdrew funds from his IRA and deposited them into his personal bank account before subsequently transferring the funds into his business.  Id. at 400.   While In re Moore involved a regular distribution (not an early distribution), the Moore bankruptcy trustee, as in this case, argued the debtor engaged in a prohibited transaction by "funneling the money through his own personal account before transferring it" to his company thus resulting in the IRA losing its tax-exempt status as an IRA under the IRC.  Id. at 403.  The Moore court disagreed and concluded §4975 of the IRC (prohibited transactions) no longer applies after the funds are deposited into debtor's personal account.  See id. at 407 ("After Moore took a regular distribution and reported it as part of his income, the restrictions in §4975 no longer applied to those funds because they ceased to be plan assets.").  As the Moore court explained "[a]fter an allowed withdrawal occurs, §4975(c)(1)(D) [transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan] is no longer applicable . . . ."  Id. at 405.

> The Trustee's stated position would logically require §4975 to operate as a limit on the use of funds withdrawn from an IRA.  But there is no statutory basis for this interpretation . . . . The IRS rules limit how plan assets can be used and when they can

be withdrawn but do not regulate the purpose for which the funds are used after they are withdrawn by the beneficiary and cease to be plan assets.

Id. at 405–406.  The Moore court concluded the debtor did not engage in a prohibited transaction and the IRA did not lose its tax-exempt status.  Id. at 402–407.  Similarly, in this case, once Debtor duly withdrew the funds, placed them in his personal account, reported the transaction, and paid the applicable taxes on the withdrawal, the restrictions of §4975 no longer applied and those funds ceased to be plan assets.

When faced with a similar issue for an early withdrawal by a disqualified person and fiduciary, the court in In re Cherwenka concluded:

> [T]he Court does not accept that the [prohibited transaction provision of 26 U.S.C. §4975(c)(1)(D)] concludes that early withdrawals [(before the age of $59^{1/2}$) from an IRA] amount to a disqualifying prohibited transaction.  The plain reading [of the statute] seems to suggest that once an early withdrawal is effectuated, this section is no longer applicable.  Funds withdrawn from the plan no longer constitute "income or assets of the plan."

Res-Ga Gold, LLC v. Cherwenka (In re Cherwenka), 508 B.R. 228, 237 (Bankr. N.D. Ga. 2014) (involving IRA) (citing Rollins v. Comm'r, 2004 T.C.M. (RIA) 2004–260, 2004 WL 2580602, at *9).  The Cherwenka court concluded the IRA was not disqualified.  Id. at 239.  As the funds Debtor withdrew and placed into his personal checking account are no longer IRA assets, Debtor's subsequent use of those funds does not fall within any of the enumerated prohibited transactions of 26 U.S.C. §4975(c)(1), and the IRA is not disqualified.  Debtor's actions in this matter were those of a plan participant duly allowed under the IRC to take an early distribution and once the funds were deposited into his personal account they were no longer plan assets.  See generally 26 U.S.C. §4975(c)(1) (in this case, the distribution was expressly allowed and was not a transaction between the plan and Debtor in his capacity as a disqualified person); see id. §4975(c)(1)(A) (no longer IRA assets), (c)(1)(B) (not an IRA loan), (c)(1)(C) (no goods, services, facilities at issue), (c)(1)(D)–(F) (no longer IRA assets).

10

Additionally, there is no statutory basis to conclude 26 U.S.C. §4975(c)'s prohibited transaction provisions provide for a 10% additional tax on an early withdrawal **and** then disqualify the entire IRA from its tax-exempt status.  See In re Cherwenka, 508 B.R. at 237 ("[I]t seems that the tax penalties associated with early withdrawals would be redundant if the entire IRA was deemed disqualified with any early withdrawal.").

The Court finds the cases cited by the Trustee distinguishable from the current case because all of those cases deal with some form of initial prohibited transaction or some subsequent tainting involving assets that remained plan assets.  Unlike the current case before the Court, In re Yerian involved a debtor facilitating prohibited transactions with IRA assets.  In re Yerian,  927 F.3d at 1226–28.  Similarly, In re Kellerman involved an initial prohibited transaction.  In re Kellerman, 531 B.R. 219, 221–22, 227 (Bankr. E.D. Ark. 2015), aff'd sub nom. Kellerman v. Rice, 538 B.R. 776 (E.D. Ark. 2015).  In addition In re Willis, involved a debtor's self-dealing attempt to use IRA funds without paying taxes on the withdrawals.  In re Willis, No. 07-11010, 2009 WL 2424548, at *10 (Bankr. S.D. Fla. Aug. 6, 2009), aff'd sub nom. Willis v. Menotte, No. 09-82303, 2010 WL 1408343 (S.D. Fla. Apr. 6, 2010), aff'd, No. 10-11980, 2011 WL 1522383 (11th Cir. Apr. 21, 2011).  Finally, In re Hughes involved an IRA loan not an early withdrawal.  In re Hughes, 293 B.R. 528 (Bankr. M.D. Fla. 2003).

For these reasons, the Court does not find that Debtor's early withdrawal of these funds to be a prohibited transaction that resulted in the Merrill Lynch IRA ceasing to be an IRA pursuant to 26 U.S.C. §408.  Therefore, the Trustee's Objection to Debtor's exemption to the Merrill Lynch IRA is ORDERED OVERRULED and the Motion as to the Merrill Lynch IRA is ORDERED DENIED.

**[END OF DOCUMENT]**